Paul Ross
PO Box 483
Paul, ID  83347
T: (208) 219-7997
#8676
F: (208) 416-6996
paul@idbankruptcylaw.com
Attorney for Debtors

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| In Re:<br><br>**LON EUGENE MONTGOMERY,**<br>**REBECCA LOUISE MONTGOMERY,**<br><br>    Debtors. | Case No: 21-40516-JDP<br>Chapter 11(V) |

PLAN OF REORGANIZATION

Lon and Rebecca Montgomery ("Debtors") propose the following Plan of Reorganization ("Plan").  Please read this Plan carefully to evaluate the effect it will have upon your claim or interest.  This Plan treats the assets of the Debtors and proposes a resolution of the claims against them.  Debtors urge all holders of claims to read this Plan completely before voting.

CHAPTER 11, SUBCHAPTER V BALLOTING AND PLAN ACCEPTANCE

This Disclosure provides relevant information about the Debtors, their financial condition, and the Plan.  The Plan, which is a legal document upon Confirmation will become binding on the parties.

Each creditor's claim is assigned to a class of claims and the treatment of each class is set forth in this Disclosure and the Plan.  Debtors have used their best efforts to comply with the requirements of §1191, and as applicable §1129, for Plan treatment.

Creditors holding allowed claims are entitled to vote to accept or reject Plan, unless the Plan lists such claims as unimpaired.  Only the votes of classes of creditors whose claims or interests are impaired by the Plan will be counted in connection with confirmation.  Plan sets forth membership of the respective classes.  Treatment of the respective classes is set forth as well.  PLEASE REVIEW PLAN CAREFULLY TO DETERMINE HOW YOUR CLAIM IS TREATED IN PLAN.

Case 21-40516-JDP    Doc 128    Filed 11/30/21    Entered 11/30/21 23:43:49    Desc Main
Document    Page 2 of 19

Generally, and subject to the specific provisions of §1124, this includes any creditor who, under Plan, will receive less than payment in full in cash of the allowed amount of their respective claims on the effective date of Plan.  It appears that all classes except administrative claims are impaired.  In determining acceptance of Plan, votes will be counted only if submitted by a creditor whose claim is scheduled by the Debtors as undisputed, non-contingent, and liquidated; or who, prior to confirmation, has filed a Proof of Claim which has not been disallowed, disqualified, suspended, or otherwise objected to prior to computation of the vote on Plan.  The ballot which accompanies this Plan does not constitute a Proof of Claim.  If you are uncertain whether your claim has been correctly scheduled, you should check with Debtors' schedules which are on file with the US Bankruptcy Court, 801 E Sherman St, Pocatello, ID  83201.

The Court will fix a date that will be the last date by which Ballots upon the proposed Plan must be filed with the Court.  All creditors entitled to vote on the Plan may cast their votes for or against the Plan by completing, dating, and signing the "Ballot for Accepting or Rejecting Plan of Reorganization" attached to this Plan as Exhibit B.  Ballots must be submitted personally or by mailing to Idaho Bankruptcy Law, PO Box 483, Paul, ID  83347.  In order to be counted, ballots must be received prior to 5:00 PM on the date specified in the Order attached as Exhibit A.  Interest holders who will not receive anything under the Plan are deemed to reject the plan under §1126(g) and are therefore not entitled to vote.

Holders of claims should receive: 1) Plan, 2) Notice, 3) Ballot.  If you do not receive a Ballot in your Package and believe you should have received one, please contact Debtors' attorney, Paul Ross, PO Box 483, Paul, ID  83347, (208) 219-7997.

Under §1126, an impaired class is deemed to have accepted the Plan if 1) at least 2/3 in amount of their claims who have voted and 2) more than 1/2 in number of the allowed claims or interests of class members who have voted on Plan have voted to accept it.  Further, unless there is unanimous acceptance of Plan by an impaired class, the Court must also determine that under Plan such class members will receive property of value, as of the effective date of the Plan, that is not less than the amount that such class member would receive or retain if Debtors were liquidated under Chapter 7 of the Code on the effective date of the Plan.  Even if all classes of claims or interests accept the Plan, the Court may refuse to confirm the Plan.  §1191, incorporating portions of §1129, sets forth the requirements for confirmation and there are other provisions

2

Plan of Reorganization

which may affect confirmation exclusive of the votes of creditors.

The Court may confirm a Plan even though less than all of the classes of claims or interests accept the Plan. The circumstances under which the Court may confirm a Plan over the objection of a class of claims or interests are set forth in §1191(b). This section provides that the Court may confirm a Plan notwithstanding its rejection by one or more impaired classes if the Court finds that the Plan does not discriminate unfairly and is fair and equitable with respect to each impaired class which does not accept Plan. Debtors will rely on the features of §1191 in the event there is a rejection of the Plan by a class of claims or interests. The invocation of the provisions of §1191 is a legal matter required to be heard by the Court at the confirmation hearing or at a hearing set by the Court.

In this case, Debtors' Plan provides that upon confirmation the Debtors' pre-petition assets will be vested in Debtors subject to repayment terms in Plan. If unsecured creditors do not accept the Plan, the parties may be left with either liquidation or an amended plan as the alternatives. It is uncertain what an amended Plan would provide. It is Debtors' opinion that the current Plan provides more than liquidation for unsecured creditors and represents the best alternative for all parties.

**Confirmation of Plan will not discharge Debtors from the creditors provided in Plan; confirmation makes the Plan binding upon Debtors, creditors, and other parties in interest regardless of whether they have accepted or rejected Plan. Confirmation of Plan will, generally, provide for the distribution of value to creditors as set forth in Plan.**

The Court will set a hearing date to determine whether the Plan will be accepted and whether the other requirements for confirmation of Plan have been satisfied. A time for hearing for confirmation of Plan will be established as noted in the Notice of Hearing in Exhibit A and each creditor should make note of that Notice and determine whether or not they wish to attend. Attendance is not mandatory to establish a claim or for a ballot to be considered.

Plan of Reorganization

DISCLOSURE STATEMENT

Debtors are 100% stockholders of The Leed Corporation ("Leed Corp").  Starting in 2016, Leed Corp entered into a number of Merchant Cash Advance ("MCA") debts.  Most of those included personal guarantees by Debtor.  Debtor also incurred other debts for the operation of Leed Corp.  While Leed Corp was able to service most of its debts along with the MCA debts, the Novel Coronavirus ("COVID-19") Pandemic severely limited the operation, income, and function of Leed Corp in 2020.  Additionally, Debtor personally was infected with COVID-19 affecting his physical and mental health and quarantined removing his time, efforts, services, and leadership of Leed Corp.  In further damage to Leed Corp, Debtor was injured in a fall which required surgery and rehabilitation which required additional time away from Leed Corp.

Leed Corp is an Idaho corporation created 24 January 1992 with its principal place of business in Shoshone, Idaho.  Leed Corp provides lawn care, landscaping, sprinkler, and other services.  Leed Corp also has limited development and farming interests.  Leed Corp, while profitable and functioning, incurred a number of MCA debts since 2016.  Servicing those MCA debts taxed Leed Corp more than $200,000 in 2018, $300,000 in 2019, and $400,000 in 2020.  With the downturn in business, COVID-19, loss of its shareholder and president for much of the year, and the loss of a crew foreman due to a serious accident (with ongoing wages and insurance owing), Leed Corp could not service the MCA debts anymore.  While some MCAs were cooperative, one of the main MCA funding entities was shut down by the SEC and Leed Corp was crippled by the loss of that lender.  Leed Corp filed Chapter 11, Subchapter V, bankruptcy in the District of Idaho on 31 December 2020, 20-40984-JDP.  Leed Corp successfully reorganized with a confirmed Plan 12 May 2021 and substantially consummated the same date.

The Leed Corp bankruptcy also listed a number of assets and liabilities which are also reflected in Debtors' plan due to co-ownership of assets or co-signing of debts.  If a Leed Corp asset is already included in the Leed Corp bankruptcy and had liquidation value calculated, that liquidation value is not duplicated in Debtors' bankruptcy as it remains in that vested estate.  Creditors that are already provided for under the Leed Corp confirmed Plan will not receive duplicate or additional treatment except for contingencies as outlined in this Plan.

While Leed Corp has successfully reorganized, Debtor still has a number of personal guarantees for which the MCA lenders have become increasingly vigilant for claims that will not be

paid or resolved in full under the Leed Corp Plan. After multiple lawsuits, Debtors ultimately filed this bankruptcy to stay and reorganize those MCA guaranties and other personal liabilities.

This Plan seeks for the reaffirmation of existing secured loans, recognizes the Leed Corp Plan and its payments of its secured debts co-signed (and in some cases co-owned assets) by Debtor, provides for potential deficiencies or unsecured portions of Leed Corp secured debts, similarly treats MCA debts as the Leed Corp Plan, pays priority and unsecured creditors more than those would have received in a liquidation bankruptcy, and proposes payments of disposable income of the Debtors for the term of the Plan.

When mailed, accompanying this Plan will be copies of the following documents:

| | |
|---|---|
| APPENDIX A: | Order Setting Deadline for Balloting, Deadline for Objections to Confirmation of Plan, and Notice of Confirmation Hearing. |
| APPENDIX B: | Ballot form for acceptance or rejection of the Plan of Reorganization. |
| APPENDIX C: | Plan Reorganization Budget |
| APPENDIX D: | Leed Corp Amended Plan |
| APPENDIX E: | Leed Corp Confirmation Order |

CLASSIFICATION OF CLAIMS OR INTERESTS

All allowed claims or interests have been placed in the following classes. §1123(a)(1). Claims or interests in multiple classes are included to the extent it qualifies within each class. If this Plan is confirmed, each claim or interest recovers only as provided in this Plan.

Only creditors or interests in classes that are impaired may vote to accept or reject this Plan, only creditors holding allowed claims may vote. Classes that are not impaired are deemed to accept the Plan.

1. ADMINISTRATIVE CLAIMS

   AC1 – pursuant to §507(a)(2) or (a)(3) arising under §330(a)

   Trustee, Christy Brandon

   AC2 – pursuant to §507(a)(2) or (a)(3) arising under §330(a)

   Idaho Bankruptcy Law, attorneys representing Debtors

2. PRIORITY CLAIMS

   PC1 – pursuant to §507(a)(8)

   Internal Revenue Service

   Idaho Tax Commission

3. SECURED CLAIMS

   SC1 – Select Portfolio Servicing ("SPS"), servicing agent for Federal Home Loan Mortgage Corporation, as Trustee for the benefit of Freddie Mac Seasoned Loans Structed Transaction Trust, Series 2019-2, mortgage on Debtors' home located at 726 North 350 East, Shoshone, Lincoln County, Idaho.

   SC2 – Idaho Central CU ("ICCU"), lender secured by a 2020 Subaru Forester.

   SC3 – Westmark Federal Credit Union ("Westmark"), secured by a 2021 Keystone RV Outback M-280 URB Ultra-Lite, 32' bumper pull trailer.

   SC4 – The following creditors are under this class:

   - Farm Bureau Bank, secured by 1997 Ford F-800, 1993 Chevrolet C1500, 1998 Ford Explorer LL, 1988 Komfort M-33-T, 2006 Polaris MV Sportsman 500, 2006 Polaris Sportsman 700, and 2007 Echo ATV trailer.

   - Gerald Martens, secured to real property at 726 North 350 East,

Plan of Reorganization

6

      Shoshone, Lincoln County, Idaho, adjacent parcel to the home parcel in SC1.

- One Main Financial, secured by a 2008 Chevrolet Suburban.
- Wells Fargo Leasing and Equipment Finance, secured by a LS Tractor.
- Westmark Federal Credit Union, secured creditor by a 2018 Chevrolet 2500 pickup.

  SC5 – The following creditors are under this class:

- CBSG-Par Funding – Contract Financing
- Crystal Springs Capital Inc.
- Diverse Capital, LLC
- Fincoast Capital LLC
- Ibex Funding Group LLC
- Landmark Funding
- Mr. Advance LLC
- Spartan Business Solutions Inc.
- United Company Funding

4. UNSECURED CLAIMS

  UC1 – General unsecured portions of any claim of SC4 and SC5 and all other general unsecured claims.

5. EQUITY INTEREST HOLDERS

  EH1 – All equity interests of Debtors.

DISTRIBUTIONS – TREATMENT OF CLAIMS AND INTERESTS

1. ADMINISTRATIVE CLAIMS

Each holder of an administrative claim allowed under §503 will be paid in full on the effective date of the Plan or upon such other terms as may be agreed upon by the holder of the claim and Debtors or as approved by the Court.  If disputed, payment will be made after resolution of the dispute by the Court and that plan is allowed as an administrative claim.  If Plan is confirmed under §1191(b), Plan provides for payment of claims as specified in §507(a)(2) or (3) rather than in full on the effective date of the Plan.

AC1 – After application pursuant to §330 and after Court approval, fees and costs shall be payable on the effective date of the Plan.

AC2 – After application pursuant to §330 and after Court approval, fees and costs shall be paid with AC1 pro rata as funds come available.

2. PRIORITY CLAIMS

Each holder of a priority claim under §507 will be paid as set forth.

PC1 – Members of this class will be paid in full on the effective date of the Plan.

3. SECURED CLAIMS

If any claimant files a claim stating none of the claim is secured, the claim shall be deemed entirely unsecured and treated pursuant to UC1.

The amount listed on a timely proof of claim, subject to allowance, shall control over any contrary amount listed by Debtors in their schedules or deemed filed pursuant to §1111(a).

Except as provided in this Plan, pursuant to §506(d) confirmation will void all liens in excess of allowed secured claims.

SC1 – Debtors entered a stipulation with SPS related to the treatment of SPS under the Plan, Dkt. No. 87-1, which was approved by the Court, Dkt. No. 110.  That Stipulation is incorporated into Debtors' Plan.  Debtors will maintain current contractual installment payments on SPS's claim secured by Debtors' home with any changes required by applicable contract and noticed in conformity with any applicable rules.  These payments will be disbursed by Debtors.

Current monthly installment payment, including escrow, is $3,136.01.  This claim is anticipated to be reduced after escrow recalculations.  Funds between later mortgage payments and this amount shall be pooled for necessary upkeep and maintenance.  If not used at the end of the plan, those funds shall be paid to UC1.

SC2 – This is a secured claim co-signed by Debtors for Lindsey Montgomery.  Debtors entered a stipulation with ICCU related to the treatment of ICCU under the Plan, Dkt. No. 89-1, which was approved by the Court, Dkt. No. 116.  That Stipulation is incorporated into Debtors' Plan.  Debtors elect to surrender the collateral secured by ICCU's claim.  Upon confirmation of this Plan the stay under §362(a) be terminated as to the collateral only.  Any allowed unsecured claim will fall within UC1.

SC3 – Debtors entered a stipulation with Westmark related to treatment of Westmark under the Plan, Dkt. No. 85-1, which was approved by the Court, Dkt. No. 108.  That Stipulation is incorporated into Debtors' Plan.  Debtor and Westmark stipulate to the value of the trailer at $45,000.  Westmark shall be paid 120 months at 7% interest at $522.49 per month beginning November 2021.  The portion of any allowed claim that exceeds the $45,000 will be treated as an unsecured claim under UC1.  Westmark will retain the lien on the property interest of the Debtors until payment of the underlying debt determined under nonbankruptcy law as modified by this Plan at confirmation.

SC4 – These are secured claims against enumerated hard assets of Leed Corp for which Debtor provided a guaranty or co-signed, some of which are co-owned by Debtor.  The Leed Corp Plan and related Confirmation Order already treats and provides for the liens of these creditors.  To the degree any of these creditors assert interest, fees, penalties, or other costs due and owing by Debtors not treated under the Leed Plan, creditors may assert such claims under this Plan and will be treated under UC1.  Such claims must be filed on or before the 30th day after the effective date of this Plan or pursuant to Stipulation.  Failure to timely submit such an unsecured claim shall constitute a waiver of the claim against Debtors.  Stipulations have been signed with OneMain, Westmark, and Wells Fargo Financial related to this class and such treatment.  Dkt. Nos. 85-1, 105-1, and 111-1.  Those Stipulations are incorporated into Debtors' Plan.

SC5 – These are secured claims against intangible assets of Leed Corp for which Debtor provided a guaranty or co-signed.  The Leed Corp Plan and related Confirmation Order

already treats and provides for the liens of these creditors, namely stripped from the assets of Leed Corp. The UCC-1s filed by any of these creditors do not attach to any property of Debtors, Debtors do not have accounts receivables for which to attach and gain a security interest. These creditors hold no security interest in any asset of the Debtors. To the degree any of these creditors assert interest, fees, penalties, or other costs due and owing by Debtors not treated under the Leed Plan, creditors may assert such claims under this Plan and will be treated under UC1. Such claims must be filed on or before the 30th day after the effective date of this Plan. Failure to timely submit such an unsecured claim shall constitute a waiver of the claim against Debtors. Spartan Business obtained a judgment in the State of New York against Debtor, but nothing was perfected against real or personal property in the State of Idaho.

4. UNSECURED CLAIMS

UC1 – Timely filed claims, and those outlined under Plan treatment of SC4 and SC5, will be treated and paid with all other unsecured claims as those claims are filed. The claims of Westmark Credit Union (credit card) and Helena Agri-Enterprises LLC will be monitored with the Leed Plan to ensure no overpayment. Pursuant to §507, priority claims are paid prior to unsecured claims. Payments will only be made on allowed claims. All unsecured claims will receive more than the minimum required based on the liquidation analysis in this Plan.

5. EQUITY INTEREST HOLDERS

EH1 – All equity interests of the Debtors shall vest equity ownership of the Debtors in the same persons at the same percentages that existed pre-petition.

Debtors shall make payments only to holders of allowed claims. No disputed claim shall receive a distribution until and to the extent that the claim becomes allowed. The presence of a disputed claim in any class shall not delay distribution to allowed claims in that class. Disputed claims that become allowed after distributions shall only receive funds as available afterward or as otherwise provided in this Plan.

Unless provided elsewhere in this Plan, no holder of an allowed claim is entitled to accrual of post-petition interest. Secured claims will be allowed to the extent provided under §506(b).

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except as otherwise provided in this Plan, or in any contract, instrument, release, or other agreement or document entered into in connection with this Plan, as of the effective date, Debtors shall be deemed to have assumed each executory contract and unexpired lease to which it is a party, unless such contract or lease was previously expired or terminated pursuant to its own terms, rejected as a matter of law pursuant to §365, or is the subject of a motion to reject filed on or before the confirmation date.  Debtors reserve the right, prior to confirmation, to seek to reject any executory contract or unexpired lease to which Debtors are a party.  The Confirmation Order shall constitute an order of the Court under §365 approving the contract and lease rejections described elsewhere in this Plan or noted in the disclosure as of the effective date.

If a rejection is obtained by the Debtors of an executory contract or unexpired lease results in a claim for damages, then such claims must be filed within 30 days after the entry of the Confirmation Order or other notice of rejection.  Failure to timely submit such an unsecured claim shall constitute a waiver of the claim against Debtors.

## PROVISIONS FOR IMPLEMENTATION AND EXECUTION OF PLAN

1. For a period of three years from the effective date of Plan, funds necessary for the satisfaction for creditors' claims shall be generated from wages and any liquidation of assets.

2. Annual disbursements to all creditors, except monthly payments to SC1 and SC3, shall be made on or before 15 March 2022, or not less than 30 days after the effective date, whichever is later, and annually thereafter.  If this Plan is confirmed under §1191(a), payments to creditors will be made directly by Debtors and not paid by the Trustee.  If this Plan is confirmed under §1191(b), payments to creditors will be made by Christy Brandon or any appointed replacement.

3. Debtors shall pay all Court approved administrative expenses in full pursuant to the terms of Plan.

4. All property of Debtors shall be retained by Debtors except as otherwise provided for in Plan.

CONFIRMATION OF PLAN

A. FEASIBILITY OF PLAN

Debtors propose funding Plan from income. Budget for the first 12 months after Plan confirmation is attached as Appendix C. All classes will be paid in full except for UC3.

B. BEST INTEREST OF CREDITORS

The Bankruptcy Code requires that each holder of an Impaired Claim either (i) accept the Plan or (ii) receive/retain property with a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor were liquidated under Chapter 7.

Under this analysis, a liquidation would result in unsecured creditors and priority creditors receiving almost $17,848.

Under the Plan, priority debts are paid in full, properly secured creditors receive their value of collateral, and unsecured creditors are paid more than they would receive in a Chapter 7.

PLEASE NOTE: VALUES UTILIZED FOR THIS ANALYSIS ARE THE BEST ESTIMATES OF DEBTORS.

| Personal Property | | | | |
|---|---|---|---|---|
| Asset | FMV | Encumbrances | Exemptions | Available Equity |
| 726 N 350 E, Shoshone, Idaho | $362,320 | $362,429 | $175,000 | $0 |
| 726 N 350 E, Shoshone, Idaho | $157,500, 50% ownership | $111,859 | $0 | $22,821[1] |
| 2013 Subaru | $7,475 | $0 | $10,000 | $0 |
| 2020 Subaru | $22,400 | $33,223 | $10,000 | $0 |
| 2007 Yamaha | $870 | $0 | $870 | $0 |
| 2006 Polaris | $750 | $15,900 | $0 | $0 |
| 1997 Ford | $5,900 | $15,900 | $0 | $0 |
| 2008 Chevrolet | $6,325 | $12,812 | $0 | $0 |
| 2020 LS Tractor | $56,000 | $62,634 | $0 | $0 |
| 1993 Chevrolet | $800 | $15,900 | $0 | $0 |
| 1998 Ford | $200 | $15,900 | $0 | $0 |

---

[1] Asset liquidation value held in Leed Corp, 20-40984-JDP, and not calculated to liquidation value in this Plan

Plan of Reorganization

12

| | | | | |
|---|---|---|---|---|
| 2007 Chevrolet | $5,500 | $0 | $0 | $5,500[2] |
| 2006 Honda | $370 | $15,900 | $0 | $0 |
| 2006 Polaris | $1,000 | $15,900 | $0 | $0 |
| 2018 Chevrolet | $39,450 | $30,900 | $0 | $8,550[3] |
| 2021 Keystone | $45,000 | $55,677 | $0 | $0 |
| 1988 Komfort | $200 | $15,900 | $0 | $0 |
| 1977 Prowler | $200 | $0 | $0 | $200 |
| 2007 Echo | $2,100 | $15,900 | $0 | $0 |
| Household items | $3,660 | $0 | $3,660 | $0 |
| Firearms | $525 | $0 | $525 | $0 |
| Jewelry | $250 | $0 | $250 | $0 |
| Clothing | $300 | $0 | $300 | $0 |
| Animals | $350 | $0 | $350 | $0 |
| Cash | $9,700 | $0 | $1,535 | $8,165 |
| Accounts | $7,516 | $0 | $7,516 | $0 |
| Funds, Stocks | $13,944 | $0 | $0 | $13,944 |
| ERISA Accts | $50,804 | $0 | $51,804 | $0 |
| Insurance | $5,614 | $0 | $5,614 | $0 |
| TOTAL | $366,315 | ($685,444) | ($267,424) | $22,309 |
| | | Cost of Liquidation (20%) | | ($4,462) |
| | | Total Liquidation Value | | $17,847 |

   The above liquidation analysis includes assets for which the liquidation value is already provided for under the Leed Corp confirmed Plan.  The real property ($22,821), 2020 LS Tractor ($0), 2007 Chevrolet ($5,500), and 2018 Chevrolet ($8,500) are all within that bankruptcy estate and liquidation value already provided.  Those assets would only be available for liquidation under this Plan should the Leed Corp bankruptcy fail.  As such, those assets are not available for liquidation under this Plan.  That reduces total liquidation to $22,309, removing cost of liquidation to $4,462, leaving $17,848 for unsecured creditors under this Plan.

---

[2] Asset liquidation value held in Leed Corp, 20-40984-JDP, and not calculated to liquidation value in this Plan

Plan of Reorganization

13

Total allowed unsecured claims are calculated at $1,660,348.  It is the Debtors' opinion unsecured creditors would most likely receive a distribution that would slightly more than 1.07% in a Chapter 7 liquidation of their claims and the Debtors' plan provides for more.  At least $1,300 a month for 24 months would pay a minimum of $31,200 to the unsecured creditors, higher than the $17,847 required for liquidation value.  Creditors will receive this minimal amount pursuant to Debtors' Plan.  Additional funds may become available depending on escrow recalculations and lot rental.

Debtors attach Appendix C with Debtors' budget and projected disposable income for review.

C.  RISK FACTORS

The Plan, like any future endeavor, carries risks.  A non-exclusive list of risks would include 1) failure of Leed Corp and the ability to continue wage payments to Debtor, 2) death of one of Debtors limiting income, and 3) a general decline in the local economy as a result of local, state, or national factors which could affect any number of provisions of Plan.  Debtors believe the risks are manageable over the timeline of Plan but discerning future events is inherently fraught with uncertainty.

MODIFICATION OF PLAN

1.	Modifications of Plan may be proposed in writing by Debtors at any time before confirmation, provided that such Plan as modified meets the requirements of §1193 and Debtors have complied with §1125.

2.	Additionally, Plan may be modified at any time after confirmation and before its substantial consummation, provided that such Plan meets the requirements of §1193, and Court after notice and hearing confirms such Plan as modified under §1193, and the circumstances then existing justify such modifications.

3.	A holder of a claim or interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified unless, within the time fixed by the Court, such holder changes its previous acceptance or rejection.

4.	Any modification of Plan will supersede and render null and void previous

---

[3] Asset liquidation value held in Leed Corp, 20-40984-JDP, and not calculated to liquidation value in this Plan

Plan of Reorganization

14

provisions that were modified.

5.	Debtors may remedy any defects or omissions or reconcile any inconsistencies in this Plan or in the final order of the Court confirming Plan in such manner as may be necessary to carry out the purpose and intent of this Plan so long as the interests of claimants or interest holders are not materially or adversely affected.

RETENTION OF JURISDICTION

Until this Plan has been fully consummated through the entry of an order completely closing the case, the Court shall retain jurisdiction over matters necessary to ensure the purposes and intent of this Plan are carried out including but not limited to the following:

1.	For determination of requests for payment of claims entitled to priority under §507(a)(2) including compensation of parties so entitled;

2.	If an appeal is perfected from the order confirming Plan, Court shall retain jurisdiction appropriate to protect the interests of the estate and to enter such orders as are necessary to protect the interests of creditors during the pendency of such appeal;

3.	To hear and determine any objection to a claim or interest when such objection is filed with the Court by Debtors;

4.	To hear and determine all questions and disputes regarding title to the property of Debtors or the estate;

5.	To correct any defect, cure any omission, or reconcile any inconsistency in Plan or the order of confirmation as may be necessary to carry out the purpose and intent of Plan;

6.	To liquidate damages in connection with any disputed claims;

7.	To adjudicate all claims of a security or ownership interest in any property of the estate or in any proceeds thereof;

8.	To allow and classify claims of any creditor, reexamine claims as provided under the code, and to hear and determine any objection to a claim or interest when Debtors file such objection with the Court;

9.	To issue any order necessary to implement Plan or order of confirmation, including without limitation such declaratory and injunctive orders as are appropriate to protect the Debtors, estate, and the reorganized Debtors in their estate from actions of creditors, interest

15

Plan of Reorganization

holders, or other parties in interest;

10. To hear and determine any dispute relating to the terms or implementation of Plan or order of confirmation, or to the rights or obligations of any party in interest and correct any defect, cure any omission, or reconcile any inconsistency in Plan or the order of confirmation as may be necessary to carry out the purpose and intent of Plan;

11. To hear and determine any modification of Plan pursuant to §1193;

12. To hear and determine any dispute, claim for relief application, adversary proceeding or contested matter pending commenced on or commenced after the confirmation date involving the collection or liquidation of assets of Debtors, including without limitation any proceeding commenced for the purpose of voiding, recovering or preserving for the benefit of the estate any transfer of property, obligation incurred by the Debtors, lien or setoff, lender liability claims, and any other professional or broker charges or any related fees.  Such retention of jurisdiction will continue over any action filed prior to the entry of a final decree closing this case;

13. To hear and determine any matter related to the assumption, assignment, or rejection of an executory contract or unexpired lease of Debtors; and

14. For entry of a final decree or order closing this Chapter 11 case.  Nothing contained herein shall be construed as restricting the Debtors in the conduct of its business and operating unless Plan specifically provides to the contrary.

DISCHARGE

If the Debtors' Plan is confirmed under §1191(a), on the effective date of the Plan, the Debtors will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in §1141(d)(1)(A), except the Debtors will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in §1141(d)(6).

If the Debtors' Plan is confirmed under §1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in §1192.  Debtors will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the Plan, or as otherwise provided in §1192; or (ii) except from discharge under §523(a), except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

EFFECT OF CONFIRMATION

In addition to provisions stated elsewhere in Plan that take effect upon confirmation, the following provisions also apply:

1. Upon confirmation of Plan all property of the estate shall vest in Debtors and shall be held and owned by Debtors free and clear of all liens, claims, and interests of all creditors, except to the extent provided for in Plan.

2. Upon confirmation of Plan, any and all compromises contained within the terms of Plan shall be deemed to be approved by Court pursuant to Fed. R. Bankr. P. 9019.

3. Pending performance and completion of Plan, unless the Court has otherwise expressly ordered or Plan otherwise expressly provides, any action by any party shall be stayed from proceeding against Debtors, Debtors' assets, or assets of the estate.

PREPAYMENT OF CLAIMS

Debtors reserve the right to prepay any and all claims without penalty. No prepayment notice shall be required.

MISCELLANEOUS

1. All headings in Plan are for convenience of reference only and neither constitute a portion of Plan nor in any manner affect the construction or meaning of the provisions of Plan.

2. The authority of Debtors to agree to modifications, supplements, or amendments of or to any agreements or instruments referred to in Plan or utilized in Debtors' businesses shall be provided in such agreement or instruments and subject to applicable Idaho law.

3. Except to the extent that the code or other federal law is applicable, the rights, duties, and obligations arising under this Plan shall be governed and construed and enforced in accordance to Idaho law.

4. The duties, rights, and obligations of any person named or referred to in this Plan shall be binding upon and shall inure to the benefit of successors or assigns of such person. The terms, provisions, and statements of fact depicted in Disclosure Statement are hereby incorporated as if set forth in full by reference and constitute terms of this Plan.

5. Whenever any payment or distribution to be made under this Plan shall be due on a day other than a business day, such payment or distribution shall instead be made, without interest, on the immediately following business day.

6. Any notice, pleading, or document required to be served by law or according to the provisions of this Plan shall be in writing and served in person or Certified Mail upon Debtors as follows:

Debtors: Lon and Rebecca Montgomery, 726 N 350 E, Shoshone, ID  83352.

Attorney for Debtors: Paul Ross, Idaho Bankruptcy Law, PO Box 483, Paul, ID  83347.

Debtors may designate in writing by Notice of Change of Address any change in the above addresses.

DATED this 30 November 2021

  /s/ Lon Eugene Montgomery
LON EUGENE MONTGOMERY

  /s/ Rebecca Louise Montgomery
REBECCA LOUISE MONTGOMERY

  /s/ Paul Ross
PAUL ROSS

CERTIFICATE OF SERVICE

I hereby certify that on 30 November 2021, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

> U.S. Trustee, ECF
> Christy Brandon, Trustee
> Andrew Jorgensen, attorney for US Trustee
> Sheila Schwager, attorney for SSP Strategies

I further certify that on such date I served the foregoing on the following non-CM/ECF Registered Participants in the manner indicated:

Via First Class mail, posted prepaid addressed as follows:

> NA

Via certified mail, return receipt requested, addressed as follows:

> NA

      /s/ Paul Ross_____
PAUL ROSS